# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PATRICIA TIGHE,

*Plaintiff*,

v.

ARCONIC INC. f/k/a Alcoa Corporation,

*Defendant.*

Civil Action No. 19-2185

**OPINION**

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of Defendant Arconic Inc.'s ("Defendant" or "Arconic") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 34. Plaintiff Patricia Tighe ("Plaintiff") opposes the Motion. ECF No. 38. For the reasons explained below, the Motion is **GRANTED**.

## I. BACKGROUND[1]

This matter arises out of Defendant's decision to terminate Plaintiff's employment in January 2017. See Pl. SOMF ¶ 98. Plaintiff alleges that the termination interfered with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA") and the New Jersey

---

[1] The Court draws the following facts from Defendant's Statement of Undisputed Material Facts ("Def. SOMF"), ECF No. 34.2, Plaintiff's Statement of Material Facts ("Pl. SOMF"), ECF No. 38.1, and the relevant record. Disputes of fact are noted.

Family Leave Act, N.J.S.A. 34:11B-1, et seq. ("NJFLA") and was the result of retaliation for taking protected family leave under the FMLA and NJFLA. See generally Compl., ECF No. 1.

## A. Howmet Castings' Leave Policies

Defendant Arconic employed plaintiff as a Process Team Member in Dover, New Jersey at its subsidiary Howmet Castings & Services Inc. ("Howmet Castings") from March 3, 2008 until January 6, 2017. Pl. SOMF ¶ 1.[2] Previously, Arconic was named Alcoa Inc. Id. ¶¶ 1-2. In November 2016, Alcoa Inc. split from Alcoa Corporation, a mining and refinery casting company that is not affiliated with or related to Arconic. Id.; Def. SOMF ¶ 5. Following this reorganization, Plaintiff remained employed at Howmet Castings and her job title, duties, and management structure did not change. Def. SOMF ¶¶ 7-8.[3]

As a Howmet Castings employee, Plaintiff received a handbook entitled "Alcoa Power and Propulsion Dover, New Jersey Operations Employee Handbook" (the "Handbook"). Id. ¶¶ 9-10; see also DiSomma Decl. Ex 5. The Handbook explains that an employee is eligible for up to 12 weeks of leave under the FMLA "during a Company designated 12-month period" if they (1) have worked at Howmet Castings for at least 12-months in the last 7 years, (2) have worked at least 1,250 hours during the 12 months preceding the start of leave, and (3) work at a job site with at least 50 employees within 75 miles. DiSomma Decl. Ex. 5 at ARCONIC_0225.[4] According to the Handbook, "[u]nless otherwise designated, the 12-month [family medical leave ("FML")] year

---

[2] On March 10, 2009, Plaintiff was laid off during a reduction in workforce, and on February 8, 2010 she was rehired. Declaration of Jennine DiSomma ("DiSomma Decl."), ECF No. 34.3, Ex 4 at Interrogatory Response No. 6.

[3] According to Plaintiff, when Alcoa Corporation and Alcoa Inc. split, "Alcoa ceased employing Plaintiff and Defendant Arconic then employed Plaintiff as a full-time machine operator. . . ." Pl. SOMF ¶ 3. Regardless of whether Alcoa Inc. or Arconic owned Howmet Castings, Plaintiff does not dispute that she was employed by Howmet Castings during her entire tenure and that her job title and duties never changed. See Pl. SOMF ¶ 1; Pl. RSOMF ¶¶ 7-8.

[4] Similarly, the Handbook explains that an employee is eligible for leave under NJFLA if they (1) have worked at the Company for at least 12 months and (2) have worked at least 1,000 hours during the 12 months preceding the start of leave. Id.

for the purposes of most types of leave will be a rolling 12-month period measured backward from the date the employee uses any FMLA covered leave." Id. at ARCONIC_226. Additionally, the Handbook contains Howmet Castings' attendance policy, which states that a Final Written Warning will be issued if an employee accumulates 32 hours (4 days) of unexcused absences and the employee will be terminated thereafter if an employee accumulates an additional 4 hours of unexcused absences. Id. at ARCONIC_0218. Finally, employees with 7-14 years of experience, such as Plaintiff, are entitled to three weeks of paid vacation per year. Id. at ARCONIC_0222. Typically, to schedule vacation days an employee must submit a Vacation/Leave Request Form at least 24 hours prior to the start time of the shift. Id. at ARCONIC_0222-23. That said, in the event of unforeseen emergencies, employees are allowed up to three emergency call-in vacation days per calendar year. Id. at ARCONIC_0223.[5]

MorningStar Health, Inc. ("MorningStar") is the third-party administrator of Defendant's leave policies. Pl. SOMF ¶ 16. Through MorningStar's system, employees report absences by providing the date, time, and reason for the absence, including whether leave is FMLA- or NJFLA-related. Id. ¶¶ 19-21. MorningStar then notifies the employee's supervisor about the employee's planned absence and creates a record of the request in the claims management system. Id. ¶¶ 22-23. For FMLA- and NJFLA-related leave, MorningStar's practice is to issue employees provisional certifications, including Notices of Eligibility. Id. ¶ 25. A Notice of Eligibility informs the employee that they are eligible to apply for leave under the FMLA and NJFLA and seeks additional medical certification in order to determine whether the absence qualifies as FMLA or

---

[5] Critically, Plaintiff does not dispute the existence or authenticity of the Handbook. Pl. RSOMF ¶¶ 9-11. Instead, in her Response to Defendant's Statement of Undisputed Material Facts, Plaintiff argues that following the split from Alcoa Corporation, Arconic did not provide Plaintiff with a new handbook with policies and procedures related to FMLA and NJFLA. See Pl. RSOMF ¶¶ 12-19. As the Court explains infra, the record clearly establishes that the Handbook prior to the reorganization continued to apply to Plaintiff following reorganization. Therefore, the fact that Arconic did not provide Plaintiff with a new Handbook is immaterial.

NJFLA leave. See Affidavit of Paul Castronovo ("Castronovo Aff."), ECF No. 38.3, Ex. K, at MORNINGSTAR 249.

## B. Plaintiff's Use of Family Medical Leave

On September 14, 2016, Plaintiff contacted MorningStar to request FMLA leave starting on September 15, 2016 to care for her mother who suffered from a serious health condition. Pl. SOMF ¶¶ 30-32. MorningStar generated an Eligibility Notice which stated that Plaintiff was eligible for FMLA leave and sought medical certification from Plaintiff in order to determine whether FML approval was appropriate. Id. ¶ 33. Plaintiff returned the medical certification forms on September 30, 2016 and specified that she was seeking approval for the full 12 weeks of leave. Id. ¶ 40; Def. SOMF ¶¶ 40-41. On October 5, 2016, MorningStar sent Plaintiff a Designation Notice that approved Plaintiff for FMLA leave starting on September 15, 2016 and ending on December 8, 2016 (12 weeks total). Pl. SOMF ¶ 41. In a section entitled "Important Reminders," the Designation Notice states, "FMLA is limited to a maximum total of 12 weeks of unpaid leave in a 12-month period. All time off work for a qualifying serious health condition will be counted against your available FMLA entitlement." Castronovo Aff. Ex. S, at ARCONIC_0175.[6]

In the meantime, every day that Plaintiff was absent during her FMLA leave, she called MorningStar to report her absence. Pl. SOMF ¶ 35. A few times, Plaintiff opened new claims instead of reporting her absences under her existing claim. Id. ¶ 36. As a result, MorningStar created new provisional certifications, which, Plaintiff contends, confused both her and Arconic

---

[6] Plaintiff does not dispute that MorningStar issued a Designation Notice or that the Designation Notice specified the end date of Plaintiff's FML and included reminders about her leave. Pl. SOMF ¶ 41; Pl. RSOMF ¶¶ 42-43. In fact, Plaintiff produced the Designation Notice during the course of discovery in the instant action. Castronovo Aff. Ex. B, Transcript of Deposition of Patricia Tighe ("Pl. Dep. Tr.") 47:4-22. That said, in her deposition, Plaintiff testified that she did not recall whether she saw the October 5 Designation Notice. Pl. SOMF ¶ 42 (citing Pl. Tr. 49:22-50:3). Lack of recollection, however, cannot create a dispute of fact in the face of affirmative testimony to the contrary. See Keating v. Pittston City, 643 F. App'x 219, 224-25 (3d Cir. 2016).

management.  See, e.g., id. ¶¶ 39, 43.[7]  Plaintiff faults Defendant for not communicating with her about her leave of absence in order to clarify the confusion.  Id. ¶¶ 46-47.[8]

On December 1, 2016, Plaintiff called MorningStar to extend her FMLA leave and left a voicemail for her case manager, Catherine Vargas ("Vargas").  Id. ¶ 48.  On December 6, 2016, Vargas spoke to Plaintiff.  Vargas informed Plaintiff that she had nearly exhausted her FMLA leave and encouraged her to speak to Arconic's Human Resources ("HR") department in regard to any other leave that might be available.  Def. SOMF ¶¶ 46-47; Castronovo Aff. Ex. J, at MORNINGSTAR 243.[9]  Thereafter, MorningStar issued an updated Designation Notice, reiterating that Plaintiff's leave was set to expire on December 8, 2016.  Pl. SOMF ¶ 50; Castronovo Aff. Ex. T, at ARCONIC_0177.  Nonetheless, Plaintiff created a new claim with MorningStar requesting additional leave to begin on December 9, 2016, and received a Notice of Eligibility from MorningStar.  Pl. SOMF ¶¶ 51-52.  This Notice of Eligibility, like the Notice issued in September, stated that Plaintiff was eligible for FMLA leave and sought medical certification from Plaintiff in order to determine whether FML approval was appropriate. Castronovo Ex. V, at MORNINGSTAR 285.

Plaintiff returned to work December 12-15, but left work early on December 15 because her mother had suffered another medical emergency.  Pl. SOMF ¶¶ 54-55.  Plaintiff did not return

---

[7] Defendant disputes this fact, contending that the record cited explains that Plaintiff's supervisor, Robert Nowatnick ("Nowatnick") was not confused but was merely clarifying where Plaintiff was during this period of time and when she would return to work.  Def. RSOMF ¶¶ 39, 43 (citing Castronovo Aff. Ex. E, Transcript of Deposition of Robert Nowatnick ("Nowatnick Dep. Tr.") 16:5-17).

[8] Again, Defendant disputes the materiality of this fact, explaining that Plaintiff clearly knew how to report her absences to MorningStar, and, moreover, that it was not Nowatnick's job to communicate with Plaintiff regarding her absences, as he is not in Arconic's HR department.  Def. RSOMF ¶¶ 46-47.

[9] Plaintiff disputes this fact, contending that she does not recall speaking to Vargas on December 6, 2016.  Pl. SOMF ¶ 49; Pl. Dep. Tr. 53-57.  Yet MorningStar Health's Certification File, kept in the ordinary course of business and provided to the Court by both parties as record evidence, indicates that this conversation did, indeed, take place.  See Castrovo Aff. Ex. J, at MORNINGSTAR 243.  The Court thus declines to credit Plaintiff's lack of recollection.

to work and continued to call MorningStar from on or around December 15 until January 5, 2017 to report her absences. Id. ¶¶ 61-62.[10] On December 21, 2016, Pilar Gilgorri ("Gilgorri"), Defendant's HR Manager, contacted MorningStar's Disability Case Manager, MaryJo Voss ("Voss") to inquire into whether Plaintiff would be eligible for more FMLA leave. Id. ¶ 64. Voss confirmed that Plaintiff was eligible for FMLA leave based on how long she had been at Arconic and how many hours she had worked in the past twelve months but explained that Plaintiff had "exhausted her eligibility" and "will not earn hours back until 9/15/17," one year after initially taking leave. Id. ¶¶ 65-66; Castronovo Aff. Ex. Y.

On January 3, 2017, Gilgorri called Plaintiff to issue a Final Written Warning for Plaintiff's unexcused absences from December 15, 2016 to January 3, 2017, but Gilgorri was unable to get in touch with Plaintiff. Pl. SOMF ¶ 75. On January 4, 2017, Gilgorri and Plaintiff talked over the phone. Id. ¶ 78. Gilgorri issued Plaintiff a Final Written Warning and informed Plaintiff that if she did not return to work on January 5, 2017, she would be terminated from her employment. Def. SOMF ¶ 59.[11] Plaintiff asked Gilgorri to give her one additional day of leave to care for her mother. Pl. SOMF ¶ 79. After failing to return to work on January 5, Plaintiff was terminated on January 6, 2017. Id. ¶ 86.

---

[10] Plaintiff contends that she reported these absences "as FMLA absences" and that she "received confirmation numbers of her accepted absences." Pl. SOMF ¶¶ 61-62. The record belies these contentions. First, MorningStar's call log from that time period indicates that Plaintiff explicitly declined FMLA leave. Supplemental Declaration of Jennine DiSomma ("DiSomma Supp. Decl."), ECF No. 41.2, Ex. 16, at MORNINGSTAR 449-54. Second, MorningStar's absence report, which Plaintiff cites as support that her absences were "accepted" actually indicates that Plaintiff could not use FMLA leave because she had insufficient remaining hours. See Castronovo Ex. X, at MORNINGSTAR 400.

[11] Plaintiff testified that she did not recall being told that she would be fired if she failed to appear for work on January 5, 2017. Pl. SOMF ¶ 81; Pl. Dep. Tr. 114:8-12. But after Plaintiff testified that she did not recall this fact, she was given Gilgorri's notes of that call which indicate so much, and Plaintiff confirmed the veracity of the notes. Pl. Dep. Tr. 118:3-23.

## C. Procedural History

On January 4, 2019, Plaintiff initiated this action in the Superior Court of New Jersey, Morris County. See ECF No. 1. The Complaint alleges four causes of action against Defendant: (1) interference with rights in violation of the FMLA, (2) interference with rights in violation of the NJFLA, (3) retaliation in violation of the FMLA, and (4) retaliation in violation of the NJFLA. Compl. ¶¶ 13-48. On January 30, 2019, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Notice of Removal, ECF No. 1. Following discovery, Defendant filed the instant Motion for Summary Judgment on October 23, 2020.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court should grant summary judgment when there is no genuine issue as to any material fact "that would permit a reasonable jury to find for the nonmoving party," Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citation and quotation marks omitted), and "the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court does not "weigh the evidence to determine the truth of the matter," but rather assesses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986).

### III. ANALYSIS

The Complaint alleges that Defendant interfered with Plaintiff's rights under FMLA and NJFLA and that Defendant retaliated against Plaintiff for taking protected leave.[12] The Court will address each argument in turn.

#### A. Interference

Plaintiff contends that the FMLA and NJFLA entitled her to an additional twelve weeks of medical leave as of January 1, 2017, and that Defendant interfered with her rights by terminating her despite that entitlement. Compl. ¶¶ 16-19, 25-28. The Court disagrees because Plaintiff lacked the right to additional leave.

"To prevail on her interference claim, [Plaintiff] must show (1) she was entitled to take FMLA leave . . . , and (2) [Defendant] denied her right to do so." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 312 (3d Cir. 2012). An employee who is eligible for FMLA and NJFLA leave is "entitled to a total of 12 workweeks of leave during any 12-month period" to care for an immediately family member with a "serious health condition." 29 U.S.C. § 2612(a)(1); see also N.J.S.A. 34:11B-4. An employer may choose the method "for determining the 12-month period in which the 12 weeks of leave entitlement . . . occurs." 29 C.F.R. § 825.200(b); N.J.S.A. 13:14-1.4(d). One such method is "[a] 'rolling' 12-month period measured backward from the date an employee uses any FMLA leave." 29 C.F.R. § 825.200(b)(4); N.J.S.A. 13:14-1.4(c)(4).[13] That said, "[i]f an employer fails to select one of the options . . . for measuring the 12-month period

---

[12] "Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA." Wolpert v. Abbott Labs., 817 F. Supp. 2d 424, 437 (D.N.J. 2011).

[13] See also 29 C.F.R. § 825.200(c) ("Under the method in paragraph (b)(4) of this section, the 'rolling' 12-month period, each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months. For example, if an employee has taken eight weeks of leave during the past 12 months, an additional four weeks of leave could be taken.")

for the leave entitlements . . ., the option that provides the most beneficial outcome for the employee will be used." 29 C.F.R. § 825.200(e); N.J.S.A. 13:14-1.4(d).

According to Plaintiff, her available FMLA leave reset on January 1, 2017 because Defendant failed to select another method for measuring the 12-month leave period. But the Handbook, which Plaintiff admittedly received and understood, Pl. RSOMF ¶¶ 9-11, specifies that Howmet Castings calculates a 12-month period for FMLA and NJFLA purposes on a rolling basis. DiSomma Decl. Ex. 5 at ARCONIC_0226. For Plaintiff, this means that her 12-month period began on September 15, 2016 when she first took FMLA leave. See Pl. SOMF ¶ 32. Because Plaintiff used all twelve weeks of leave, she was not entitled to additional leave until September 15, 2017, one year later.

Plaintiff contends that Arconic failed to promulgate a method for calculating a 12-month period for FMLA and NJFLA purposes because the Handbook was no longer applicable after Arconic's reorganization. Id. ¶¶ 11-12. Yet, Plaintiff admits that Howmet Castings remained her employer throughout her entire tenure. Id. ¶ 1; Def. SOMF ¶ 1. And regardless, for the purposes of the FMLA, an "employer" includes "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II); see also Vanderhoof Life Extension Inst., 988 F. Supp. 507, 512 (D.N.J. 1997) ("W]hen an employer is a 'successor in interest,' employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer.") (quoting 29 C.F.R. § 825.107(c)). Here, in light of the fact that Howmet Castings' business operations remained identical both before and after the reorganization, Arconic was clearly the successor in interest of Alcoa Inc. See Podurgiel v. Acme Mkts., Inc., No. 16-2262, 2018 WL 2303794, at *8 (D.N.J. May 21, 2018) (concluding that new employer was successor in interest for FMLA purposes because business operations and management remained the same).

Thus, the mere fact that Howmet Castings' parent company changed does not mean that its policies changed or that it needed to circulate a new handbook.

Plaintiff also argues that Defendant's FMLA policies were unclear and, as a result, Plaintiff thought that she was entitled to more FMLA leave. The instances of alleged confusion that Plaintiff points to, however, do no refute the material facts that Plaintiff (1) signed and received the Handbook laying out Howmet Castings' FMLA policies, and (2) was told repeatedly that her leave expired on December 8, 2016. See Pl. RSOMF ¶¶ 9-10; Pl. SOMF ¶¶ 41, 50. For example, Plaintiff contends that nobody at Arconic called her to clarify her FMLA rights, id. ¶ 45, but Plaintiff was in possession of the Handbook clearly laying out Howmet Castings' policies, and Arconic was not required to further clarify its policies beyond this, see 29 C.F.R. § 825.200(d) (merely requiring an employer to give their employees notice of their policies). Moreover, Vargas, Plaintiff's case manager at MorningStar, did clarify Howmet Castings' FMLA policies on December 6, 2016, prior to the end of Plaintiff's 12-week leave. See Castrovo Aff. Ex. J, at MORNINGSTAR 243. Additionally, Plaintiff claims that she was confused because MorningStar continued to issue her provisional Eligibility Notices, Pl. SOMF ¶¶ 34-37, but these Eligibility Notices plainly state that Plaintiff was eligible for FMLA leave based on her tenure at Howmet Castings, but that more documentation was required to determine whether approval of leave was appropriate. See, e.g., Castronovo Ex. V, at MORNINGSTAR 285.[14] Simply put, Howmet Castings' FMLA and NJFLA policies were perfectly clear and all information that Plaintiff

---

[14] Plaintiff's arguments that MorningStar's procedures were unclear and/or inconsistent in other ways are similarly unpersuasive. For example, she relies on the fact that when she took FMLA leave in 2014, she called MorningStar to request additional time off and was granted her request. Pl. SOMF ¶¶ 26-28. This fact is irrelevant, because in 2014 when Plaintiff made her request for additional leave, she had only used 7.5 weeks of leave and thus had 3.5 more weeks of FMLA leave. See Def. RSOMF ¶ 27. In 2016 when Plaintiff made her request for additional leave, she had used all twelve weeks of leave.

received from Defendant and MorningStar was consistent with these policies and was similarly clear.[15]

Finally, Plaintiff takes issue with the fact that nobody at Arconic informed Plaintiff that she had additional vacation days she could have used after the expiration of her FMLA leave. Pl. SOMF ¶ 80. But the FMLA does not protect an employee who seeks to take advantage of additional leave not covered by the FMLA. See, e.g., Weidner v. Unity Health Plans Ins. Corp., 606 F. Supp. 2d 949, 956 (W.D. Wis. 2009) (collecting cases and holding "that a plaintiff cannot maintain a cause of action under the FMLA for an employer's violation of its more-generous leave policy"); Cluney v. Mon-Oc Fed. Credit Union, 2006 WL 2128985, at *16 (N.J. Super. Ct. App. Aug. 1, 2006) (holding that because plaintiff "was terminated for an absence that was not protected by either the FMLA or the NJFLA, she has no cause of action for discrimination or interference with her rights under either statute"). Put another way, it cannot be said that an employer interferes with an employee's right to take leave under the FMLA if an employee has exhausted their leave.

For all of these reasons, Plaintiff has failed to create a genuine issue of material fact as to whether Defendant interfered with Plaintiffs rights under the FMLA and NJFLA.

### B. Retaliation

Plaintiff also contends that she was terminated in retaliation for taking protected family medical leave under the FMLA and NJFLA. Compl. ¶¶ 37, 46. Again, the Court disagrees.

Plaintiff's retaliation claims are evaluated under McDonnell Douglas's burden shifting framework. See Rymas v. Princeton Healthcare Sys. Holding, Inc., No. 15-8188, 2017 WL

---

[15] Plaintiff likens her alleged confusion here to the facts in Hall-Dingle v. Geodis Wilson USA, Inc., No. 15-1868, 2017 WL 899906 (D.N.J. Mar. 7, 2017). Hall-Dingle, however, is inapposite. In Hall-Dingle, this Court held that an employer failed to properly notify the plaintiff employee of her FMLA and NJFLA rights and should have allowed the plaintiff to cure incomplete medical certification forms because she had not exhausted her FMLA leave. Id. at *4-6. Here, however, Defendant had adopted clear FMLA and NJFLA policies. Moreover, because Plaintiff had exhausted her FMLA leave, there is nothing for Plaintiff to "cure."

4858123, at *11 (D.N.J. Oct. 27, 2017). Under this framework, Plaintiff first bears the burden of establishing a prima facie case of retaliation. In order to establish a claim for unlawful retaliation, Plaintiff must show "(1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave." Palen v. Alcan Packaging, 511 F. Supp. 2d 445, 448 (D.N.J. 2007); see also Schummer v. Black Bear Distrib., LLC, 965 F. Supp. 2d 493, 501 n.7 (D.N.J. 2013) (applying same standard to NJFLA retaliation claims). Second, if Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate business reason for the adverse employment action. Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 80 (3d Cir. 2019). Third, Plaintiff bears the final burden to demonstrate that Defendant's proffered reasoning was a mere pretext through evidence that the provided rationale was false or that the real reason for the adverse action was discriminatory or retaliatory animus. Id.

First, Plaintiff fails to proffer any evidence that would show a causal link between her protected leave and ultimate termination. A plaintiff may prove causation by introducing "evidence of circumstances that give rise to an inference of discrimination in light of her ultimate termination." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 843 (3d Cir. 2016). "Temporal proximity that is unduly suggestive satisfies the causation element of a plaintiff's prima facie case." Palen, 511 F. Supp. 2d at 448-49 (internal quotation marks and citations omitted). Plaintiff contends that she has established causation based on temporal proximity, because she was terminated one day after she spoke to Gilgorri and requested an additional day of leave. See Pl. SOMF ¶ 79.[16] This argument confuses the timeline, as Plaintiff's FMLA leave expired on December 8, nearly one month prior to her being terminated. See, e.g., Palen, 511 F. Supp. 2d at

---

[16] The Court notes there were actually two days between the time that Plaintiff spoke with Gilgorri on January 4 and the date that she was terminated on January 6. Pl. SOMF ¶¶ 78, 86; Def. SOMF ¶ 61.

449 (explaining that three weeks between a protected activity and adverse employment action is not "unduly suggestive" of retaliation) (citing <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003)). And, the January 4 incident cited by Plaintiff cannot support a claim for retaliation. Plaintiff's request for additional time off is not protected activity because this extra day was a request for discretionary vacation time rather than FMLA leave mandated by law. <u>See Dominici v. Reading Hosp./Tower Health</u>, No. 18-4181, 2020 WL 2898658, at *23 n.23 (E.D. Pa. June 3, 2020) ("[S]imply requesting vacation is not a protected activity.").

Second, Plaintiff has not pointed to any evidence that the reason for her termination was pretextual. Defendant presents a legitimate, non-retaliatory business reason for terminating Plaintiff: she had taken 11 days of unexcused absences in violation of Howmet Castings' attendance policy. Def. SOMF ¶ 53. A plaintiff's violation of an employer's attendance policy is a non-retaliatory reason for termination. <u>See Marsh v. GBG, LLC</u>, 455 F. Supp. 3d 113, 123 (D.N.J. 2020) ("[T]ermination due to excessive, unexcused, non-FMLA absences is enough to warrant a finding in Defendant's favor."); <u>Moore v. U.S. Foodservice, Inc.</u>, No. 11-2460, 2013 WL 5476405, at *8 (D.N.J. Sept. 30, 2013) ("[T]here is no support in the record for Plaintiff's claim that Defendant terminated his employment in retaliation for taking FMLA leave. Rather, Plaintiff exceeded the number of unexcused absences allowed by his employer, and was subject to the employer's progressive disciplinary policy, which ultimately resulted in Plaintiff's termination.").[17] Additionally, any allegation of pretext is belied by the record, which demonstrates that Plaintiff took FMLA leave in the past was never retaliated against. Pl. SOMF ¶¶ 26-27; Def. SOMF ¶¶ 64-66 (explaining that Plaintiff took FMLA leave in 2014); <u>see also</u>

---

[17] As explained <u>supra</u>, the Court rejects Plaintiff's arguments to the contrary that Howmet Castings had not adopted a clear attendance policy.

Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1091 (8th Cir. 2014) (concluding that an employee's use of FMLA leave on other occasions "without repercussions" suggests "that the employer was not hostile to the protected activity").

The Court therefore finds that a reasonable jury could not find that Defendant unlawfully retaliated against Plaintiff following her return from FMLA leave.

**IV. CONCLUSION**

For the reasons contained herein, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order accompanies this Opinion.

**Dated**: May 28, 2021

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**